IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BARRY WRIGHT, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | No. 08-3440 |
| | : | |
| MICHAEL ASTRUE, Commissioner of | : | |
| Social Security Administration, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM RE: SOCIAL SECURITY APPEAL**

**Baylson, J.**                                                                                                        **April 21, 2009**

Plaintiff, Barry Wright, seeks judicial review of the decision by the Commissioner of the Social Security Administration ("Defendant") denying his application for Social Security disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act ("the Act"). For the reasons described below, the Court will affirm the decision of the Administrative Law Judge ("ALJ") and deny Plaintiff's request for benefits or a new hearing.

**I.      Background Information**

      **A.      Facts and Procedural History**

Plaintiff applied for social security benefits on May 30, 2006. (R. 93-104). Plaintiff asserts that he became disabled on July 28, 2005 after an accident at work caused Plaintiff to suffer from post-traumatic stress disorder ("PTSD"). (R. 249). Plaintiff, a longshoreman, was operating a machine when the cab in which he was sitting caught on fire. Plaintiff was forced to

quickly flee the cab, though he escaped without suffering any physical injury. (R. 251). Plaintiff was admitted to the hospital on July 31, 2005 for confusion, anxiety, and memory impairment. (R. 163). Shortly thereafter, on August 2, 2005, he started therapy with Dr. Doyle for PTSD. (R. 256). He has not returned to work since the accident. (R. 31-32).

Plaintiff's initial application was denied on August 24, 2006. (R. 65). Plaintiff then sought a hearing before an ALJ, which was held on September 13, 2007. (R. 20). At the hearing, the ALJ heard testimony from Plaintiff, a medical expert who had reviewed Plaintiff's medical file, and a vocational expert. (R. 25-54). On September 26, 2007, the ALJ issued a decision denying benefits. (R. 8).

The ALJ concluded that Plaintiff had not engaged in substantial gainful activity since July 28, 2005 and that Plaintiff was suffering from a severe impairment, PTSD, under the Act. (R. 13). However, the ALJ also found that Plaintiff did not have an impairment or combination of impairments meeting or medically equivalent to the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, and therefore turned to an analysis of Plaintiff's residual functional capacity ("RFC"). (R. 13-14). After examining the record and evaluating the hearing testimony, the ALJ concluded that Plaintiff could perform a full range of work at all exertional levels limited to simple, repetitive, routine tasks with low social contact. (R. 14). Although those limitations indicated Plaintiff could not perform his past relevant work, the ALJ found, based on the testimony of the vocational expert, that there were jobs in the national economy that met those criteria. The ALJ therefore determined that Plaintiff was not disabled under the Act. (R. 17-18).

Plaintiff has filed a timely request for review of that decision.

B.   **Information in the Record**

After the work accident, Plaintiff sought treatment from Dr. Doyle, a board certified psychiatrist. Dr. Doyle treated the Plaintiff from August 2005 until May 2007, when Plaintiff moved to Georgia to live with his brother. (R. 56, 222-56). Dr. Doyle allegedly saw Plaintiff over sixty times during that period. Most of Dr. Doyle's treatment notes indicate "moderate" anxiety and depression and diagnose Plaintiff with PTSD, which Dr. Doyle concluded rendered Plaintiff "totally disabled." (Id.). However, several of the treatment notes also indicated that Dr. Doyle and Plaintiff had discussed Plaintiff's gradual return to work and that Plaintiff was hopeful to do so. (R. 228-29). Dr. Doyle's notes emphasize that Plaintiff suffered from additional aggravating stressors, including his daughter's suffering from sickle cell anemia, the lack of resolution of his workers compensation claim, the death of a co-worker in a work-related accident, and Plaintiff's financial difficulties. (R. 222-56).

On July 24, 2006, in an evaluation of Plaintiff's limitations, Dr. Doyle concluded that Plaintiff had moderate impairments with regards to his ability to understand and remember detailed instructions, carry out detailed instructions, and make judgments on simple work-related decisions. (R. 274). Dr. Doyle also found that Plaintiff had moderate restrictions on his ability to interact appropriately with the public and to respond appropriately to changes in a routine work setting but had marked restrictions on his ability to interact appropriately with supervisors and co-workers and to respond appropriately to work pressures in a usual work setting. (R. 274). In contrast, in a similar medical source statement on August 6, 2007, Dr. Doyle concluded that Plaintiff was extremely impaired with regards to all of those abilities. (R. 391-92). Dr. Doyle's assessment did not provide any reasoning for the decline in Plaintiff's abilities to engage in

work-related activities.

Plaintiff was also seen by an examining psychiatrist, Dr. Reiger, for a pending workers' compensation claim that was related to the same July 2005 accident. Dr. Reiger examined Plaintiff on three separate occasions: September 21, 2005; December 15, 2005; and May 3, 2006. (R. 221). Dr. Reiger agreed with Dr. Doyle that Plaintiff suffered from PTSD as a result of the work-related accident and that Dr. Doyle's treatment was reasonable and necessary. However, Dr. Reiger disagreed that Plaintiff was totally disabled. Instead, Dr. Reiger opined that Plaintiff could return to work as long as it did not involve the same type of equipment. (R. 211, 221). In the last examination, Dr. Reiger concluded that Plaintiff could expect no further improvement from treatment and was no longer disabled. Dr. Reiger also suspected, based on Plaintiff's performance on a psychological test, the MMPI, that Plaintiff was exaggerating his symptoms to benefit his workers' compensation and disability claims. (R. 201).

A medical consultant, Dr. Cullari, also reviewed the medical record and concluded that Plaintiff's RFC is consistent with the opinion of Dr. Reiger and that Dr. Reiger's opinion was consistent with other evidence in the record. (R. 269).

Finally, at the hearing, a medical expert, Dr. Saul, testified regarding Plaintiff's condition. (R. 44). Basing his opinion on a review of the record, Dr. Saul found that Plaintiff's restrictions on his daily living, including concentration, persistence, and pace, were at most moderate. (R. 47). Dr. Saul opined that Plaintiff engaged in avoidant and isolative behavior and that he would likely require a job with low social contact. (R. 47). Dr. Saul testified that based on Dr. Doyle's assessment, Plaintiff would be limited to simple, routine, repetitive tasks; however, Dr. Saul expressed his disagreement with Dr. Doyle's medical source statement because he did not feel

the record reflected that severe of an impairment. (R. 48).

At the hearing, the ALJ questioned the vocational expert on whether there were jobs in the national economy that could be performed at any exertional level but that were limited to simple, routine, repetitive tasks with low social contact. The vocational expert explained that such jobs, including commercial cleaners, did exist. (R. 52). The vocational expert also testified that if the ALJ completely adopted Dr. Doyle's final assessment, Plaintiff could not work at all. (Id.) When questioned by the Plaintiff's attorney, the vocational expert further explained that even if Plaintiff suffered from marked restrictions on his ability to interact with the public, supervisors, and co-workers, he could still perform the job of a commercial cleaner. (R. 53).

## II.     Legal Standards

### A.     Jurisdiction

The Social Security Act provides for judicial review by this Court of any "final decision of the Commissioner of Social Security" in a disability proceeding. 42 U.S.C. § 405(g) (2000).

### B.     Standard of Review

On judicial review of the Commissioner's decision, the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." Id. "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . . .'" Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005) (quoting Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003)). In reviewing the record for substantial evidence, however, this Court must "not 'weigh the evidence or substitute [its own] conclusions for those of the fact finder.'" Rutherford, 399 F.3d at 552 (quoting Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992)). This Court's review of the legal standards applied by the ALJ is plenary. See Allen

v. Barnhart, 417 F.3d 396, 398 (3d Cir. 2005).

### C. Disability Claims Analysis

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner of the Social Security Administration has promulgated regulations requiring a five-step analysis to determine the eligibility of claimants for benefits. First, if the claimant is engaged in substantial gainful activity, the claim must be denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claim must be denied unless the claimant is suffering from a severe impairment or combination of impairments that significantly limits physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). Third, if the claimant's severe impairment(s) meets or equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claim is approved. 20 C.F.R. §§ 404.1520(d), 416.920(d).

Fourth, if the claim is not approved under Step 3, the claim will be denied if the claimant retains the residual functional capacity ("RCF") to meet the physical and mental demands of his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). Finally, if the claimant does not retain the RFC to perform past relevant work and there is no other work in the national economy that the claimant can perform, considering his or her RFC, age, education, and past relevant work experience, then the claim will be approved. 20 C.F.R. §§ 404.1520(g), 416.920(g).

**III.    Discussion**

Plaintiff argues that the ALJ erred in Steps 4 and 5 of the analysis by not giving the opinion of the treating physician, Dr. Doyle, controlling weight.  Plaintiff asserts that the ALJ erred in not adopting Dr. Doyle's conclusion that Plaintiff suffered from "extreme" non-exertional limitations that precluded Plaintiff from working in any capacity.  Instead, the ALJ found Plaintiff suffered from less severe limitations and only asked the vocational expert regarding jobs with those less severe limitations.  Plaintiff also argues that the ALJ erred in finding Plaintiff's own testimony to be only partially credible.

**A.    The ALJ's Consideration of the Treating Physician's Assessment**

Plaintiff first asserts that the ALJ gave improper weight to the final opinion of Dr. Doyle, Plaintiff's treating psychiatrist.  In that opinion, found in the August 2007 medical source statement, Dr. Doyle indicated Plaintiff was extremely impaired and would be unable to maintain any gainful employment.  The ALJ found Dr. Doyle's various other notes and assessments and the other medical opinions in the record to be inconsistent with the medical source statement and thus did not adopt Dr. Doyle's conclusions.  (R. 16-17).  Plaintiff argues that the ALJ's consideration of Dr. Doyle's medical source statement violates the treating physician's rule, which entitles the opinion of a treating physician to controlling weight absent significant evidence inconsistent with that opinion.  See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (discussing weight given to opinions of treating physicians).

The Third Circuit has held that an "ALJ may not simply ignore the opinion of a competent, informed, treating physician."  Gilliland v. Heckler, 786 F.2d 178, 183 (3d Cir. 1986).  Such an opinion cannot be rejected where there is no contrary medical evidence.

Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir. 1988); see also SSR 96-2p, 61 Fed. Reg. 34490, 34490-92 (July 2, 1996) (explaining that a "well-supported" medical opinion only requires reasonable support for the opinion and that a treating physician's opinion "need not be supported by all of the other evidence . . . as long as there is no other substantial evidence in the case record that contradicts or conflicts with the opinion"). It is an error of law to reject the treating physician's opinion without an adequate explanation. Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999).

Plaintiff suggests that the ALJ did not reject Dr. Doyle's opinion due to contradictory evidence but because the ALJ believed six months had passed between Plaintiff's last treatment session and Dr. Doyle's issuing the August 2007 medical source statement. Plaintiff suggests this was in error because Dr. Doyle had actually seen Plaintiff in May 2007 and had informed the ALJ of that treatment session at the hearing. (R. 33-34, 56). Plaintiff also argues the ALJ improperly discredited Dr. Doyle's notes and opinions because Dr. Doyle referenced additional stressors such as Plaintiff's daughter's illness and his financial situation. However, based on the record and the ALJ's detailed opinion, this Court cannot find that the ALJ lacked substantial evidence when he chose not to give controlling weight to Dr. Doyle's findings in the medical source statement.

In rendering his decision, the ALJ gave a thorough recitation of the evidence in the record, including the assessments by Dr. Doyle and Dr. Reiger and the testimony of Dr. Saul at the hearing. As the ALJ noted, Dr. Doyle's own treatment notes are not consistent with his final assessment indicating extreme limitations and a complete inability to work. Rather, those earlier notes indicated only marked to moderate anxiety, moderate depression, and social withdrawal.

Furthermore, as the ALJ observed, Dr. Doyle's notes also reflect his intention to have Plaintiff gradually return to work; thus, in contrast to his final opinion, at some point in his treatment of Plaintiff, Dr. Doyle thought Plaintiff could work to some extent.  Dr. Reiger's assessments similarly found Plaintiff to suffer from PTSD but to be fully capable of returning to work. Likewise, Dr. Saul testified that he disagreed with Dr. Doyle's final conclusion that Plaintiff suffered from limitations that restriction him to simple, repetitive tasks because the record did not support such a finding.  The ALJ noted in his opinion,

> Dr. Saul disagreed with Dr. Doyle's Medical Source Statement that the claimant had extreme limitations in a multitude of work-related activities in that there is nothing in the record (including Dr. Doyle's own treatment notes) to show this degree of impairment.  I concur with Dr. Saul's opinion.

The ALJ's thorough examination of the materials in the record provided an adequate explanation for the his ultimate conclusion that Dr. Doyle's medical source statement  was inconsistent with the rest of the record, including his own notes, and thus did not deserve controlling weight.

Plaintiff points to a recent Third Circuit decision emphasizing that a doctor's treatment notes may justifiably be different than his ultimate conclusion on the claimant's ability to work, as they are intended for different purposes, and the two are not necessarily inconsistent with each other even if they reflect different opinions.  <u>Brownawell v. Commissioner of Socia Security</u>, 554 F.3d 352, 356 (3d Cir. 2008).  While this may be true for treatment notes and formal opinions on work capabilities, Dr. Doyle's August 2007 medical source statement was directly inconsistent with his own July 2006 formal evaluation of the same work-related abilities.  Presumably, those two assessments on Plaintiff's ability to work were intended for the same purpose, so the Third Circuit's reasoning is not directly applicable here.  Furthermore, Dr. Doyle has not provided any

explanation for the fairly dramatic difference between his evaluation of Plaintiff's limitations in the final medical source statement and the earlier evaluation. Given this lack of explanation and the numerous treatment notes by Dr. Doyle, which do not reveal any indication of extreme limitations and are more consistent with the earlier evaluation, the ALJ did not err in finding that Dr. Doyle's final medical source statement was not entitled to controlling weight.

Furthermore, in addition to the internal inconsistencies in Dr. Doyle's opinions, the other medical testimony in the record also contradicts Dr. Doyle's final opinion on Plaintiff's inability to work. In light of the entire record, the ALJ did not lack substantial evidence to support his finding that the impairments were less severe than Dr. Doyle indicated in the statement. Thus, even if the ALJ erred in calculating the time between Plaintiff's last treatment session and the August 2007 medical source statement and then relied on that incorrect time lapse in evaluating Dr. Doyle's opinion, that error is harmless. The ALJ emphasized in his opinion sufficient alternative grounds, as explained above, for not giving Dr. Doyle's statement controlling weight.

Recently, this Court came to a similar conclusion in Rivera v. Astrue, 2009 WL 235353 (E.D. Pa. January 29, 2009). There, the Court found that the treating physician's opinion was not entitled to controlling weight due to the extent of contrary medical evidence in the record. Id. at *3-4. The Court there also noted that the ALJ had not entirely discounted the treating physician's opinion. Id. at *4. Similarly, though the ALJ here did not give Dr. Doyle's medical source statement controlling weight, he did give substantial consideration to Dr. Doyle's overall treatment notes and assessments. Both Dr. Reiger and Dr. Saul indicated they did not believe Plaintiff was impaired to the extent that he was even limited to routine, repetitive tasks. Yet the ALJ imposed those limitations on the vocational expert's analysis, indicating he gave some credit

to Dr. Doyle's conclusions. Thus, as in <u>Rivera</u>, "[g]iven the evidence in the record, this Court cannot find that the ALJ's conclusion about the type of work Plaintiff could perform lacked substantial evidence or that the weight given to each medical opinion in rendering that conclusion was improper." <u>Id.</u>

### B. ALJ's Consideration of Plaintiff's Credibility

Plaintiff further suggests that the ALJ erred in finding Plaintiff's testimony only partially credible. The ALJ specifically found that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms," but the Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are are not entirely credible." (R. 15). "An ALJ must give great weight to a claimant's subjective testimony of the inability to perform even light or sedentary work when this testimony is supported by competent medical evidence." <u>Schaudeck v. Commissioner of Soc. Sec. Admin.</u>, 181 F.3d 429, 433 (3d Cir. 1999). While the ALJ can reject a Plaintiff's subjective claims if he does not find them credible,

> the adjudicator is not free to accept or reject that individual's complaints solely on the basis of such personal observations. Rather, in all cases in which pain or other symptoms are alleged, the determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations. The rationale must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's ability to work.

<u>Id.</u> (quoting SSR 95-5p, 1995 WL 670415, at *2). As discussed above, the record contains several opinions from other medical professionals that are inconsistent with both Dr. Doyle's final medical source statement and Plaintiff's own description of his limitations. The record also

contains some evidence, namely Plaintiff's performance on the MMPI, a psychiatric test, that Plaintiff may have exaggerated his symptoms. Under the deferential substantial evidence standard, this Court cannot find that the ALJ erred in finding Plaintiff's testimony to not be entirely credible.

## IV.  Conclusion

The ALJ therefore possessed substantial evidence in support of his decision and provided an adequate explanation for his conclusion that the treating physician's final opinion should not be given controlling weight. Similarly, the ALJ did not improperly find Plaintiff's testimony to be only somewhat credible. Thus, the ALJ did not err at Steps 4 and 5 of the analysis and properly concluded, based on the entire record of medical evidence, that although Plaintiff suffered from a severe impairment, he could perform some jobs available in the national economy and thus was not disabled.

An appropriate Order follows.

O:\Lauren\Wright v. Astrue\SJ memo.wpd